UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

                                           **ORDER**
          -against-                       CV 11-215  (WFK) (AKT)

WARREN D. NADEL, WARREN D. NADEL
& CO., REGISTERED INVESTMENT
ADVISERS, LLC, and KATHERINE NADEL

                    Defendants.
---------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Pending before the Court are two motions: (1) Defendants' motion to compel the

production of testimony and documents concerning the compensation received by the Plaintiff

Securities and Exchange Commission's ("Plaintiff" or "SEC") expert witness, Dr. Robert Porter

and (2) Defendants' motion to compel the production of certain interview notes created by non-

attorneys discussed in a prior Order of this Court.

      For the reasons set forth below, the Court DENIES, in part, Defendants' motion to

compel the production of Dr. Porter's compensation information and DENIES Defendants'

motion to compel the interview notes.

**I.      MOTION TO COMPEL DR. PORTER'S COMPENSATION INFORMATION**

      **A.     Background**

      Dr. Porter is an Assistant Professor of Finance at Iowa State University who is currently

serving at the SEC's Division of Risk, Strategy and Financial Innovation pursuant to an

Intergovernmental Personnel Act agreement awarded in June 2010.  DE 46-1.  Pursuant to the

agreement, the SEC states that Dr. Porter receives his regular compensation from Iowa State

University and there is no agreement between the SEC and Dr. Porter regarding any additional compensation. *Id*.

On January 23, 2012, Defendants moved to compel the production of Dr. Porter's employment agreement and related compensation information. DE 31. Plaintiff opposed the motion. DE 33. Later that week, on January 27, 2012, the parties submitted a joint letter stating that they had resolved "a discovery dispute that arose earlier this week" with respect to Dr. Porter. DE 35. In light of this statement, the Court denied Defendants' motion to compel as moot. *See* Electronic Order Dated January 30, 2012. Thereafter, counsel for Defendants contacted Chambers to inform the Court that the dispute referred to in the January 27, 2012 letter was not the motion to compel Dr. Porter's compensation information, but rather was a separate dispute that had not previously been brought to the Court's attention. Counsel was instructed to re-file the motion to compel if Defendants still sought judicial intervention.

On February 24, 2012, the Defendants re-filed their motion. DE 45. The SEC opposed the motion on the grounds that it was an untimely request for reconsideration of the Court's prior denial of the motion as moot. DE 46. In the alternative, Plaintiff requested that the Court consider its previously filed opposition which was re-filed as DE 46-1. In light of the fact that the Court denied the motion as moot based on an incorrect understanding that the issue was resolved, the Court will decide the motion on the merits and will consider Plaintiff's opposition.

Although the SEC acknowledged in its letter opposition that some of the issues raised by Defendants may be appropriate for counsel to explore at Dr. Porter's deposition, *see* DE 46-1 at 2, counsel for Defendants called the Court on March 7, 2012, during Dr. Porter's deposition. Defendants were seeking judicial intervention because Dr. Porter refused to answer any questions

concerning his compensation.  After hearing from counsel for both sides, I directed that Dr.

Porter was not required to answer the questions posed until a ruling was issued on Defendants'

motion to compel.

**B.    Discussion**

The SEC objects to the disclosure of Dr. Porter's compensation information because such

disclosure would "constitute an invasion of Dr. Porter's legitimate privacy concerns."  DE 46-1

at 2.  Defendants maintain that information such as the renewability of Dr. Porter's contract with

the SEC and the possibility of continued employment or additional compensation may

demonstrate bias and is relevant to Dr. Porter's credibility.

Federal Rule of Civil Procedure 26(a)(2) creates a distinction between experts who must

provide a written report and those who need only provide a summary of their facts and opinions.

An expert witness must provide a report if the witness is "retained or specially employed to

provide expert testimony in the case *or one whose duties as the party's employee regularly*

*involve giving expert testimony*."  Fed. R. Civ. P. 26(a)(2)(B) (emphasis supplied).  If an expert

falls within these parameters, then the expert must include in his or her report "a statement of the

compensation to be paid for the study and testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B)(iv).

The SEC does not contest the applicability of this section.  As such, Dr. Porter would

typically be required to provide a statement of the compensation paid for his study and testimony

in the case.  The Court accepts the representation that Dr. Porter is an "employee" faculty

member of Iowa State University who provides services to the SEC via the intergovernmental

agreement.   Dr. Porter stated that he provided his opinion in this case "'as part of [his] regular

employment with the SEC'" and received no compensation other than his "'regular salary.'"  DE

45 at 1-2 (quoting Porter Nov. 10, 2011 Report at 2).

Several courts in other federal districts have ruled that in similar cases, where the expert

is also an employee, Rule 26 does not require the disclosure of specific salary or benefit

information.  For example, in *Morrow v. Greensouth Equip., Inc.*, No. 10-CV-137, 2010 WL

5094304, at *1-2 (N.D. Fl. Dec. 7, 2010), the Court explained its rationale as follows:

> . . . [A] party is not required to disclose the annual employee
> compensation of an employee-expert where, as here, the
> compensation is not tied to nor dependent upon the opinions offered.
> There is a simple and pragmatic reason for this.  The reason a party
> is obligated under Rule 26(a)(2)(B) to disclose "the compensation to
> be paid for the study and testimony" of the expert is to allow the
> opposing party to demonstrate and explore the bias of the expert.  For
> example, if the expert was paid an hourly rate well above the
> prevailing rate for an expert a party would be able to argue to the jury
> that the compensation should be taken into account in assessing the
> credibility of the expert.
>
> On the other hand, where the expert is a full time salaried employee
> of the party offering the opinion of the expert . . . the amount of the
> expert-employee's salary – as opposed to the mere fact the expert is
> an employee – would make no difference regarding bias so long as
> the salary and benefits are not tied in any way to the opinions offered
> by the employee-expert.

The court went on to note that "any bias [the employee] may have because he serves as an

employee and expert can be explored adequately by [opposing] counsel on cross-examination

without the need to know the annual salary of the [employee]."  *Id*. at *2.

Likewise, in *Porter v. Hamilton Beach/Proctor Silex, Inc.*, No. 01-CV-2970, 2003 WL

22385679, at *1 (W.D. Tenn. Aug. 27, 2003), the court refused to compel the expert who was an

employee of the defendant to produce his salary and 401(k) information even though the Court

4

concluded that his duties as an employee regularly involved giving expert testimony. The Court held that the expert's status as a "full-time, salaried employee of [the defendant] is sufficient to demonstrate bias" and the plaintiff had not made a sufficient showing of the need for the amount of his salary or the value of his 401(k) plan. *Id*. at *2. Therefore, the court in *Porter* directed that the expert report need not include the expert's compensation information and the motion to compel the expert to answer deposition questions about his compensation was denied. *Id*. Similarly, in *Wisconsin Electric Power Co. v. Union Pacific Railroad Co.*, No. 06-CV-515, 2008 WL 934431, at *1 (E.D. Wis. March 31, 2008), the court refused to require production of compensation information for two employee experts and noted that the "fact that both witnesses receive bonus compensation, which amount may or may not be influenced by the outcome of the instant litigation, is too speculative to require disclosure of personal information, especially where the fact of employment is equally sufficient to demonstrate bias." *See also Haynes v. Shoney's Inc.*, No. 89-CV-30093, 1991 WL 354933, at *5 (N.D. Fl. Sept. 27, 1991) (holding that party was not required to produce compensation documents for non-expert employee witnesses because their employment with the party alone was sufficient to demonstrate bias).

Although not binding in this district, the Court finds the reasoning of the courts in *Morrow*, *Porter*, *Wisconsin Electric*, and *Haynes* to be persuasive. Here, the fact that Dr. Porter is a full-time salaried faculty member of Iowa State University, essentially "on loan" to a specific division of the SEC is sufficient to demonstrate bias. *Porter*, 2003 WL 22385679, at *2. This Court agrees that no purpose would be served by requiring Dr. Porter to disclose further salary and benefit information and concludes that Dr. Porter has fulfilled his obligations under Rule 26. Dr. Porter did not receive any separate compensation for his work on this particular case and by

5

conveying this information to Defendants, he has stated "the compensation for the study and testimony in the case." *See* Fed. R. Civ. P. 26(a)(2)(B)(iv).

Defendants do not rest their argument entirely on the language of Rule 26, however, and argue that the details of Dr. Porter's compensation arrangement should be disclosed as it may demonstrate bias and it is relevant to his credibility. On this point, *Carey Oil Co. v. MG Refining & Marketing, Inc.*, 257 F. Supp. 2d 751 (S.D.N.Y. 2003) is instructive. In that case, the plaintiffs sought compensation information regarding two of the defendants' experts in order to assess whether the compensation they received motivated them to change their opinions from reports they issued for a 1995 arbitration to the 2011 reports they had produced for the litigation then before the court. The court in *Carey Oil* ruled that a party seeking such information in order to demonstrate bias must demonstrate a reasonable suspicion that the compensation paid to the expert may have affected his or her opinion. The court ruled that the defendants had not satisfied this standard and therefore denied the plaintiffs' motion. *Id*. at 756-58.

Here, Defendants have not pointed to any specific circumstance raising suspicion that the particular compensation paid to Dr. Porter affected his opinions. As noted in the cases described above, Defendants may call attention to the fact of Dr. Porter's employment with the SEC in order to attempt to demonstrate bias, but they have made no showing that his salary or other compensation information is necessary. The amount of Dr. Porter's salary would not affect a jury's determination of credibility or bias because Dr. Porter's full-time salaried position itself indicates that he has an interest in the outcome. *See Porter*, 2003 WL 22385679, at *2.

The Court has reviewed the cases cited by Defendants that require disclosure of expert witness compensation information and finds that Defendants' reliance on these cases is

misplaced.  For example, looking to the facts of *In re Parmalat Securities Litigation*, No. 04-MD-1653, 2007 WL 1815461, at *1 (S.D.N.Y. June 25, 2007), the defendant Bank of America was seeking an order compelling the plaintiff to produce all engagement and retention letters between him and any PricewaterhouseCooper ("PwC") entity or representative regarding the MDL litigation before the court.  PwC was the outside auditor for defendant Bank of America's and the plaintiff had designated as expert witnesses three accountants employed by PwC.  *Id*.  The issue involved a stipulation executed by the plaintiff and defendant Bank of America that, notwithstanding the language of Rule 26(a)(2)(B), the parties would not be required to disclose or produce in discovery any drafts of expert reports or documents "constituting or reflecting communications between an expert and a party or counsel in this action."  *Id*.  Because the stipulation said nothing about disclosure of facts pertaining to the compensation or terms of engagement of the expert, the court required the plaintiff to produce the information.  These facts are clearly distinguishable from those now before this Court – *In re Parmalat* does not deal with an employee-expert and the instant case does not involve any stipulation between the parties concerning restraints on expert discovery.

Defendants' reliance on *County of Suffolk v. Long Island Lighting Co.*, 122 F.R.D. 120 (E.D.N.Y. 1988) is equally unavailing.  In that case, the court was dealing with an outside expert from a consulting firm retained by the plaintiff Suffolk County and defendants were attempting to have the expert identify the percentage of his professional income in the last three years that was attributable to fees received from the County – an entirely legitimate and reasonable request.  *Id*. at 124.  The expert was not an employee of the County.  *Id*.  Similarly, there is no indication in *Auster v. River Capital International Group, LLC*, 00 Civ 9708, 2002 WL 20341614, at *1, 2

(S.D.N.Y. Sept. 4, 2002), *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, No. CV 91-4178, 1993 WL 30674, at *1 (C.D. Cal. Aug. 6, 1993), or *Boselli v. Southwestern Pennsylvania Transportation Authority*, 108 F.R.D. 723 (E.D. Pa. 1985) that the expert was an employee of the party. The substance of those decisions points to the contrary. As such, the circumstances are not analogous to those in this case. Defendants' reliance on Federal Rule of Civil Procedure 26(b)(4)(C)(1), an exception to the work product privilege, is also misplaced as that Rule is inapplicable to the documents Defendants seek here.

In sum, the SEC and Dr. Porter need not produce documents regarding his compensation arrangement, nor are Defendants entitled to depose Dr. Porter on these subjects. However, because Defendants have raised concerns as to the veracity of Dr. Porter's statement, and for the sake of completeness, the Court is directing the SEC to provide the following documents for an *in camera* review within ten (10) days: (1) document(s) showing Dr. Porter's compensation from Iowa State University; (2) document(s) showing the SEC's Division of Risk, Strategy, and Financial Innovation reimbursement of that amount back to ISU; and (3) the very limited portion of the Intergovernmental Personnel Act Agreement of 2010 which shows the salary/compensation provision for Iowa State University faculty providing services to the SEC.

## II.   MOTION TO COMPEL THE 2010 NON-ATTORNEY INTERVIEW NOTES

### A.   Background

This Court previously ruled that certain interview notes created in 2009 by non-attorney SEC staff members were not protected work product and further directed the SEC to disclose the notes. DE 32. In that Order, the Court reserved decision on other non-attorney interview notes created in 2010 since the Court needed to review the notes *in camera* first. *Id*. at 6-7. The Court

stated that after it conducted its review of the notes and made a determination as to whether they

were fact or opinion work product, "if appropriate, [it would] direct Defendants to make a

showing regarding whether their substantial need for the materials outweighs the privilege." *Id*.

Thereafter, the SEC requested leave to supplement the record on this issue with an affidavit and

to submit a brief letter discussing the applicable case law.  DE 36.  The Court granted this request

and provided Defendants with an opportunity to respond by February 17, 2012.  *See* Electronic

Order Dated February 3, 2012.  On February 17, 2012, Defendants submitted a letter setting forth

their "substantial need for the 2010 non-attorney interview notes."  DE 42.  Because the Court

had previously advised Defendants that it was not considering the issue of substantial need at that

time, the Court rejected this submission.  *See* Electronic Order Dated February 28, 2012.  Upon

further review, the Court notes that portions of the letter were responsive to the SEC's

submission and therefore will consider those portions at this time.

### B.    Discussion

The so-called "work product privilege" is codified in Federal Rule of Civil Procedure

26(b)(3) which provides, in part, as follows:

> Ordinarily, a party may not discover documents and tangible things
> that are prepared in anticipation of litigation . . . .  But, subject to
> Rule 26(b)(4), those materials may be discovered if: (i) they are
> otherwise discoverable . . . ; and (ii) the party shows that it has
> substantial need for the materials to prepare its case and cannot,
> without undue hardship, obtain their substantial equivalent by other
> means.
>
> . . . If the court orders discovery of those materials, it must protect
> against disclosure of the mental impressions, conclusions, opinions,
> or legal theories of a party's attorney or other legal representative
> concerning the litigation.

The work product privilege "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *U.S. v. Aldman*, 134 F.3d 1194, 1196-97 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385 (1947)). A classic example of information protected by the work product privilege is an analysis of one's case in anticipation of litigation. *Id.* The party seeking to assert the privilege has the burden of establishing its existence. *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, __ F.R.D __, No. 08-CV-4063, 2011 WL 5519840, at *4 (S.D.N.Y. Nov. 14, 2011).

Fact work product is treated differently from "opinion" or "core" work product, the latter of which reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (internal quotations omitted). For fact work product, the privilege may be overcome where the party seeking discovery "(1) has substantial need of the materials, and (2) the party is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund*, 2011 WL 5519840, at *4 (internal quotations omitted); *see In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183-84. Opinion work product, however, is entitled to greater protection and in order to obtain such material, the party seeking disclosure must make a "far stronger showing of necessity and unavailability by other means." *Upjohn Co. v. U.S.*, 449 U.S. 383, 401, 101 S. Ct. 677 (1981)); *U.S. v. Jacques Dessange, Inc.*, No. 99-CR-1182, 2000 WL 310345, at *2 (S.D.N.Y. March 27, 200).

Several courts have held that the work product privilege applies to notes taken during witness interviews conducted as part of an SEC investigation.  *See SEC v. Strauss*, No. 09-CV-4150, 2009 WL 3459204, at *4-5 (S.D.N.Y. Oct. 28, 2009); *SEC v. Stanard*, No. 06-CV-7736, 2007 WL 1834709, at *1 (S.D.N.Y. June 26, 2007); *SEC v. Cavanagh*, No. 98-CV-1818, 1998 WL 132842, at *2 (S.D.N.Y. March 23, 1998).  The privilege applies even if the notes were prepared by non-attorneys.  *See Strauss*, 2009 WL 3459204, at *6.

The 2010 notes at issue here were created during interviews of certain of Defendants' former investors conducted as part of an investigation of Defendants initiated by the New York Regional Office of the SEC's Division of Enforcement.  *See* February 9, 2012 Declaration of Alison T. Conn [DE 40-1] ("Conn. Decl.") ¶ 2.  The interviews took place between March 26, 2010 and October 14, 2010.  *Id*. ¶ 4.  At the time they were conducted, the SEC anticipated that it would be bringing an enforcement suit against Defendants and indeed the SEC issued its first Wells notice to Defendants on April 26, 2010, approximately one month after the first investor interview was conducted.  *Id*. ¶ 8.  This action was filed on January 13, 2011.  Based on these facts, the Court finds that the SEC has met its burden of demonstrating that the notes were prepared in anticipation of litigation and that the notes are therefore protected work product.[1]

A closer question is whether the notes constitute fact or opinion work product.  Courts have reached different results in deciding whether notes taken during witness interviews are fact or opinion work product.  *Compare SEC v. Nacchio*, No. 05-CV-480, 2007 WL 219966, at *10

---

[1]      Unlike the 2009 notes that this Court previously found were not attorney work product, these notes were prepared by the Enforcement Division, the section of the SEC charged with handling litigation.  *See* Conn Decl. ¶ 2.  Also unlike the 2009 notes, the SEC has made a sufficient showing that the non-attorneys who prepared the notes were working at the direction of SEC attorneys.  *See id*. ¶ 6.

11

(D. Colo. Jan. 25, 2007) (holding that handwritten notes by SEC accountants working under the direction of SEC attorneys constituted classic opinion work product), *SEC v. Treadway*, 229 F.R.D. 454, 455-56 (S.D.N.Y. 2005) (refusing to order production of SEC proffer session notes because they reflected the thought processes of counsel), *Jacques Dessange, Inc.*, 2000 WL 310345, at *3 (holding that attorney's notes made during her client's interview with the government were opinion work product), *and SEC v. Cavanagh*, 1998 WL 132842, at *4 (holding that attorney notes of interviews that reflected mental impressions were subject to heightened scrutiny), *with In re John Doe*, 675 F. 2d 482, 492-93 (2d Cir. 1982) (holding that notes of interviews of corporation's employees were not protected "in these particular circumstances" because the questions they revealed "merely disclose[d] the concerns a layman would have") *and SEC v. Thrasher*, No. 92-CV-6987, 1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995), *aff'd*,1995 WL 456402 (S.D.N.Y. Aug. 2, 1995) (holding that notes taken during interviews were fact work product "at least to the extent that the notes constitute summaries of what a party or witness has stated to the attorney and his representative"); DE 42 at 1-2 (discussing cases where courts have treated witness statements as factual work product).  The decision, therefore must be made on a case-by-case basis.

After considering the circumstances and reviewing the notes submitted *in camera*, the Court concludes that the notes at issue are core or opinion work product and that Defendants must therefore satisfy the heightened standard for disclosure.  Although the notes generally consist of summaries of the witnesses statements, as opposed to analysis by the note takers, they still reflect the mental thought processes of the SEC attorneys.  The Court is persuaded by the reasoning of the court in a case involving a similar issue, *SEC v. Sentinel Management Group,*

*Inc.*, No. 07-CV-4684, 2010 WL 4977220 (N.D. Ill. Dec. 2, 2010), which applied the heightened

standard for the following reason:

> This court agrees that an attorney's mental processes are revealed to a certain extent even when the attorney's memorandum is factual in nature, merely summarizing what the witness said in response to the attorney's questions. The attorney exercises judgment in determining which witnesses to interview, what subject areas to cover (and not cover), how to frame specific questions and in what order, and how much time to devote to particular topics. Further, the attorney exercises selective judgment in determining what is worthy of being written down (or remembered) during the interview. As a result, when opposing counsel is giving access to the attorney's notes or memoranda from a witness interview, the attorney's mental processes necessarily are revealed.

*Id*. at *9; *see also Upjohn*, 449 U.S. at 400 (noting that memoranda based on oral statements of

witnesses is "the sort of material the draftsmen of [Rule 26] had in mind as deserving special

protection").[2]

Here, the non-attorney note takers were either SEC Staff Accountants or a Securities

Compliance Examiner who were familiar with the legal strategy of the investigation. Conn Decl.

¶ 6. The note takers were instructed by SEC attorneys to record only the most relevant

information. *Id*. During the interviews, the attorneys would at times indicate to the staff

members that they should take note of particular statements made by the witnesses that the

attorneys felt were particularly important. *Id*. Given these circumstances, there is a real concern

that the notes are "'permeated with [the attorneys'] inferences.'" *See SEC v. Downe*, No.

---

[2]     Defendants statement that *Upjohn* is "inapposite because [it] only involved the attorney-client privilege – not the work product doctrine," *see* DE 42 at 1 n.2, is inaccurate and the case Defendants cite for this proposition does not support their statement.

92-CV-4092, 1994 WL 23141, at *4 (S.D.N.Y. Jan. 27, 1994) (quoting *Upjohn*, 449 U.S. at 399-400)).  Some of the notes also contain underlining, the disclosure of which would reveal what the staff note takers and/or attorneys felt was important information.

Moreover, as other courts have recognized, in a situation like this, disclosure of the questions asked may reveal the attorney's thought processes.  *See SEC v. Berry*, No. 07-CV-4431, 2011 WL 825742, at *8-9 (N.D. Cal. March 7, 2011) (surveying cases and holding that interview notes were opinion work product because, *inter alia*, they revealed the attorney's thought processes in selecting the subjects and questions of the interviews); *SEC v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008) (holding that even the revelation of purely factual assertions contained in interview notes "may reveal the questions asked and therefore the attorneys' mental impressions and conclusions"); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. AARPO, Inc.*, No. 97-CV-1438, 1998 WL 823611, at *1 (S.D.N.Y. Nov. 25, 1998) (holding that it would be impossible to segregate attorney's theories and processes of case from factual statements made on transcript of witness interviews).  In conducting the investor interviews, the SEC attorneys followed an outline prepared by Attorney Maureen King that was "the product of the legal theories of the case, the legal strategies [the SEC was] pursuing in the investigation, and a selection of the issues to be covered that [the SEC] determined to be most relevant to [its] legal analysis."  Conn Decl. ¶ 5. Therefore, even disclosure of the factual statements may well reveal the SEC's legal strategy in this instance.

For the foregoing reasons, the Court concludes that the interview notes consist of core or opinion work product and Defendants will need to make a heightened showing in order to compel disclosure.  As noted, despite the Court's direction that it would only require Defendants

13

to make a showing of their need for the materials after it determined whether the notes were fact or opinion work product, *see* DE 32 at 6-7, Defendants have already submitted a letter addressing their need for the notes, DE 42.  If Defendants wish to rely solely on this letter in demonstrating their need for the notes, they are to inform the Court by April 26, 2012.  If they wish to submit additional material, not to exceed 3 pages, they must do so by April 26, 2012.  The SEC's response, if any, is not to exceed 3 pages and is due by May 4, 2012.  Both submissions should be limited solely to Defendants' need for the notes.

**SO ORDERED:**

Dated: Central Islip, New York
       April 16, 2012


                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        United States Magistrate Judge

13