```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SECURITIES & EXCHANGE COMMISSION,          :
                                           :         DECISION & ORDER
                       Plaintiff,          :         11-CV-215 (WFK) (AKT)
                                           :
       -v.-                                :
                                           :
WARREN D. NADEL;                           :
WARREN D. NADEL & CO.; and                 :
REGISTERED INVESTMENT ADVISERS, LLC,       :
                                           :
                       Defendants,         :
                                           :
       -and-                               :
                                           :
KATHERINE NADEL,                           :
                                           :
                       Relief Defendant.   :
                                           :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

The Securities and Exchange Commission ("SEC") brought this action against Defendants Warren D. Nadel ("Nadel"), Warren D. Nadel & Co. ("WDNC"), and Registered Investment Advisers, LLC ("RIA") (collectively, "Defendants"), as well as Relief Defendant Katherine Nadel ("Relief Defendant"), seeking damages and injunctive relief for alleged violations of the Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and the Investment Advisers Act of 1940 ("Advisers Act"). ECF No. 11 ("Amended Complaint"). On March 31, 2015, the Court granted the SEC's motion for partial summary judgment and denied Defendants' cross-motion for summary judgment. ECF No. 100 ("Summary Judgment Order"). The Court referred the issue of relief to Magistrate Judge Tomlinson, who conducted a four-day evidentiary hearing and issued a Report and Recommendation on February 11, 2016. ECF No. 128 ("R&R"). Defendants filed their objections to the Report and Recommendation on March 8, 2016, and the SEC filed its reply papers on April 8, 2016. ECF Nos. 130 ("Objections"), 131 ("Reply"). After a *de novo* review of the record, the Court ADOPTS the Report and Recommendation.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts of this case, which are detailed in the Court's Summary Judgment Order and Magistrate Judge Tomlinson's Report and Recommendation.

1

On March 31, 2015, the Court granted the SEC's motion for summary judgment against Defendants for violations of: (1) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5 and 10b-10 promulgated by the SEC thereunder, 17 C.F.R. §§ 240.10b-5, 240.10b-10; (2) Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and (3) Sections 206(1), 206(2), and 206(3) of the Advisers Act, 15 U.S.C. § 80b-6. Summary Judgment Order at 1. The Court reserved decision on the issue of relief at that time, referring it to Magistrate Judge Kathleen Tomlinson for further fact-finding. *Id.* at 21-22. Magistrate Judge Tomlinson conducted an evidentiary damages hearing over a period of four days, from July 20, 2015, through July 23, 2015. R&R at 2.

On February 11, 2016, Magistrate Judge Tomlinson issued a Report and Recommendation recommending the Court: (1) grant the SEC's request for permanent injunctive relief against Defendants; (2) award the SEC disgorgement in the amount of $10,776,687.62; (3) require the SEC to submit a revised prejudgment interest calculation based upon a deduction of $183,026.68 in clearing charges from total disgorgement; (4) find Defendants jointly-and-severally liable for the total amount of disgorgement and prejudgment interest to be awarded; (5) impose a third-tier civil penalty on Defendants in the amount of $1,000,000.00; and (6) order the Relief Defendant to disgorge $963,379.85, inclusive of prejudgment interest. *Id.* at 64-65. Defendants filed objections to the Report and Recommendation on March 8, 2016, and the SEC filed reply papers on April 8, 2016. *See* Objections; Reply. After a *de novo* review of the record, the Court ADOPTS the recommendations contained in the Report and Recommendation as follows.

## DISCUSSION

### I. Legal Standard

In reviewing a Report and Recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court must conduct a *de novo* review of any contested portions of the Report and Recommendation when a party makes specific objections to the magistrate judge's findings. *Norman v. Metropolitan Transp. Authority*, 13-CV-1183, 2014 WL 4628848, at *1 (E.D.N.Y. Sept. 15, 2014) (Matsumoto, J.). The Court is "permitted to adopt those sections of a magistrate judge's report to which no specific objection is made, so long as those sections are not facially erroneous." *Id.* (citing *Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.)).

### II. Analysis

#### A. Injunctions and Civil Penalties

In her Report and Recommendation, Magistrate Judge Tomlinson recommends (1) Defendants be permanently enjoined from future violations of the anti-fraud provisions of the securities laws and (2) Defendant Nadel be required to pay $1,000,000.00 in third-tier civil penalties. R&R at 20, 57. Neither party objected to these recommendations. After a careful *de novo* review of the record, the Court ADOPTS those sections of the Report and Recommendation concerning injunctions and civil penalties.[1]

---

[1] Civil penalties may not be imposed on a joint and several basis in SEC enforcement actions. *See SEC v. Pentagon Capital Mgmt.*, 725 F.3d 279, 287-88 (2d Cir. 2013). In adopting this section of the Report and Recommendation, the Court views Magistrate Judge Tomlinson's recommendation to be for a $1,000,000.00 penalty against individual Defendant Warren D. Nadel, and not against the two corporate defendants. *See* R&R at 47-57.

### B. Defendants' Disgorgement

Magistrate Judge Tomlinson recommends this Court order Defendants to disgorge $10,959,714.30—the disgorgement figure calculated by the SEC—less $183,026.68 in clearing costs, plus prejudgment interest. *Id.* at 24, 35, 41-42. Defendants do not object to the imposition of disgorgement or prejudgment interest. Rather, Defendants contend they are entitled to further offsets from the disgorgement figure calculated in the Report and Recommendation. Objections at 1. The Court addresses each of Defendants' arguments in turn.

#### 1. Principal Trades

Defendants object to Magistrate Judge Tomlinson's recommendation that Defendants are not entitled to an offset of $2,256,644.54 in principal trading losses, as these losses "were netted out . . . and thus should not be double-counted by offsetting [them] from the overall disgorgement figure." R&R at 28. First, Defendants argue the SEC improperly incorporated the commissions earned on Defendants' losing principal trades into its disgorgement calculation, while excluding the trading losses suffered on these trades. Objections at 4. Second, Defendants cite to *SEC v. McCaskey*, 98-CV-6153, 2002 WL 850001, at *4 (S.D.N.Y. Mar. 26, 2002) (Peck, M.J.), for the proposition that the SEC erred in excluding Defendants' principal trading losses from disgorgement while including principal trading profits occurring at the same time—and as part of the same scheme—as the losing trades. Objections at 5. Third, Defendants argue it is improper for the SEC to exclude principal trading losses from its disgorgement calculation because it is undisputed that Defendants had larger total principal trading losses than profits. *Id.* at 8.

To Defendants' first objection, the SEC responds that it was proper to include brokerage commissions from Defendants' losing trades into their disgorgement calculation, as such

4

commissions represent a wholly separate stream of unlawful income from any profits obtained through the trades themselves. Reply at 11-12. In response to Defendants' second and third objections, the SEC argues *McCaskey* is inapposite, as that case involved a series of otherwise facially valid trades which became unlawful only when considered together. *Id.* at 10. In this case, however, the SEC argues that each of Defendants' trades was independently unlawful, and therefore disgorgement should be measured without regard for any separate unprofitable trades, or for the fact that Defendants had larger total losses than profits. *Id.*

This Court finds Magistrate Judge Tomlinson's recommendation regarding principal trades to be supported by the evidence. It is well-established in this Circuit that the profit made on an independently unlawful trade is subject to disgorgement regardless of whether losses were sustained on any other transaction. *See, e.g.*, *SEC v. Svoboda*, 409 F. Supp. 2d 331, 344-45 (S.D.N.Y. 2006) (Mukasey, J.) (refusing to deduct losses incurred in separate, unlawful insider trades from insider trading disgorgement calculation); *SEC v. Boock*, 09-CV-8261, 2012 WL 3133638, at *4 (S.D.N.Y. Aug. 2, 2012) (Cote, J.) (refusing to deduct losses incurred on separate trades from disgorgement of profitable sales). Furthermore, this Court is not persuaded *McCaskey* governs. In *McCaskey*, the SEC calculated disgorgement by focusing on sixteen particular transactions, "ignoring all other transactions during the more than six month manipulation scheme." 2002 WL 850001, at *7. Those "other transactions" were critical in *McCaskey*, as the scheme-liability provision of Section 10(b) of the Securities Exchange Act requires a court to analyze an entire set of facially valid trades to determine whether they became unlawful when considered as a whole. In contrast, violations of Section 206(3) of the Advisors Act and Rule 10b-10 of the Exchange Act—such as those found in this case—are transaction specific, and require calculation of disgorgement on a trade-by-trade basis.

5

The SEC expressly considered all principal trades during the relevant period, from January 1, 2007, through December 31, 2009, and incorporated only those seventy-one groups of principal trades resulting in an overall net profit. *See* R&R at 28. Any principal trades which included some internal profit but resulted in an overall net loss were not incorporated into the SEC's disgorgement figure. Therefore, as Magistrate Judge Tomlinson correctly stated, "such losses were netted out . . . and thus should not be double-counted by offsetting those losses from the overall disgorgement figure." *Id.* That Defendants had more total losses than profits is irrelevant; they are liable for each individual transaction resulting in a profit.

The Court also finds that the SEC properly incorporated into its disgorgement calculation brokerage commissions obtained from all of Defendants' unlawful transactions, including those which resulted in a loss. As undisclosed principals, Defendants were not entitled to brokerage commissions under Section 206(3) and Rule 10b-10 regardless of whether the trades resulted in a profit or a loss. Consequently, the Court ADOPTS Magistrate Judge Tomlinson's recommendation that Defendants are not entitled to an offset of $2,256,644.54 in principal trading losses.

### 2. Payments to Pasetsky, Allen, and Saxton

Defendants also object to Magistrate Judge Tomlinson's recommendations that Defendants are not entitled to an offset of $2,885,269.58 in payments made to Hal Pasetsky, Nate Allen, and Joe Saxton, as these payments were "closer to a general business expense than a direct transaction cost" and therefore could not be deducted from disgorgement as brokerage commissions. R&R at 31. Defendants argue these payments were in fact brokerage commissions, and, as such, should be considered "direct trading costs" and discounted from any disgorgement award under Second Circuit precedent. Objections at 8-10 (citing *McCaskey*, 2002

6

WL 850001, at *4; *SEC v. East Delta Res. Corp.*, 10-CV-310, 2012 WL 3903478, at *6 (E.D.N.Y. Aug. 31, 2012) (Feurstein, J.); *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071 (S.D.N.Y. 1990) (Cannella, J.)).

The SEC replies that Defendants' payments to Pasetsky, Allen, and Saxton were not brokerage commissions, because Defendant Nadel himself acted as the sole broker on all relevant trades. Reply at 14. After collecting brokerage fees and commissions for himself, the SEC contends Defendant "funneled these payments to Pasetsky, Allen, and Saxton" under a profit-sharing arrangement. *Id.* Accordingly, the SEC argues that Magistrate Judge Tomlinson correctly categorized these monetary transfers as "ancillary" payments rather than "direct transaction costs" and that she correctly refused to deduct such payments from disgorgement. *Id.*

After a thorough review of the record, this Court finds that Defendant's payments to Pasetsky, Allen, and Saxton were not brokerage commissions. Magistrate Judge Tomlinson properly identified the ancillary nature of these payments after a four-day damages hearing in which numerous witnesses testified, including Defendant Nadel. It is apparent from Defendant Nadel's testimony that "Nadel himself executed the trades, received the commission income from the trades, and then parsed out Pasetsky's [and Allen's, and Saxton's] share based upon the fee arrangement which was in place." R&R at 31. Defendants' protestations to the contrary are impassioned, but merely "labeling someone a broker and categorizing such payments as direct transaction costs does not make them so." *Id.* at 32.

Given the ancillary nature of Defendants' payments to Pasetsky, Allen, and Saxton, the payments should not be deducted from disgorgement. *See, e.g., SEC v. U.S. Envtl., Inc.*, 94-CV-6608, 2003 WL 21697891, at *28 (S.D.N.Y. July 21, 2003) (Leisure, J.) (refusing to allow deduction from disgorgement for illicit profits defendant shared with his trader under a prior

arrangement because the arrangement "was more a method of compensating [defendant's] employees, than it was a brokerage commission[.]"). The Court therefore ADOPTS Magistrate Judge Tomlinson's recommendation that Defendants are not entitled to an offset of $2,885,269.58 in payments made to Hal Pasetsky, Nate Allen, and Joe Saxton.

### 3. Payments to Polycom

Defendants further object to Magistrate Judge Tomlinson's recommendation that Defendants are not entitled to a deduction of $553,063.37 in payments made to Polycom, as these payments stemmed from "Defendants' non-compliance with Polycom's investment policy," and thus were not a "repayment of an ill-gotten gain" that may be offset from disgorgement. R&R at 37 (internal quotation marks omitted). Defendants argue that because these funds were "repaid" to Polycom—a client harmed by Defendants' fraudulent scheme—the proceeds of Defendants' ill-gotten gains "flowed back to the victim" and should offset Defendants' disgorgement obligation. Objections at 13 (citing, *inter alia*, *Disraeli v. SEC*, 334 F. App'x 334, 335 (D.C. Cir. 2009)).

The SEC replies that Defendants' payments to Polycom had nothing to do with the fraud at issue in this case; rather, these payments were compensation stemming from a prior dispute. Reply at 15. As such, the SEC argues, it would "make no more sense to credit Defendants with these payments than it would to credit them, for example, for repairing property damage they may have caused their clients." *Id.* at 16.

The Court agrees with the reasoned recommendation of Magistrate Judge Tomlinson. Defendants have not satisfied their burden to establish a justification for every offset sought from disgorgement. *See* R&R at 21-22 (citing, *inter alia*, *SEC v. Rosenfeld*, 97-CV-1467, 2001 WL 118612, at *2 (S.D.N.Y. Jan. 9, 2001) (Pauley, J.)). Defendants cite to caselaw holding that

restitution payments made to fraud victims may offset disgorgement obligations for that same fraud. *See* Objections at 13-14. Such precedent does not govern this setting, where Defendants repaid Polycom pursuant to a promissory note issued following Defendants' non-compliance with Polycom's investment policy. *See* R&R at 36-37. Accordingly, the Court ADOPTS Magistrate Judge Tomlinson's recommendation that Defendants are not entitled to an offset of $553,063.37 in payments made to Polycom.

### 4. "Hedging" Trades

Finally, Defendants object to Magistrate Judge Tomlinson's recommendation that Defendants are not entitled to an offset from disgorgement of $118,175.22 in payments made to Man Financial and MF Global in order to execute "hedging" trades, as "any profits garnered on such trades would not have been illegal in the first instance," and the Court may only offset expenses incurred in garnering illegal profits. R&R at 35. Defendants argue that, because hedging was "an integral part of Defendants' Dividend Capture Strategy, from which the advisory fee disgorgement is derived," payments to Man Financial and MF Global are "direct transaction costs of Defendants' advisory fees, which are subject to disgorgement." Objections at 17-18.

The SEC replies that the hedging trades at issue are not in and of themselves unlawful, regardless of whether hedging was a part of Defendants' overall investment strategy. Reply at 17. Because direct trading costs may offset disgorgement only where they were made to effect a fraudulent transaction, Defendants argue any profits made from these hedging trades should not be included in the Court's disgorgement calculation for cross-trading commissions. *Id.* (citing *SEC v. Thomas James Associates*, 738 F. Supp. 88, 94 (W.D.N.Y. 1990) (Telesca, C.J.)).

9

The Court finds that the payments made by Defendants to Man Financial and MF Global were not unlawful. Defendants may have intended the trades to hedge against losses incurred in other, unlawful trades, but the hedging trades themselves did not violate any securities laws. Therefore, the Court ADOPTS Magistrate Judge Tomlinson's recommendation that Defendants are not entitled to an offset from disgorgement of $118,175.22 in payments made to Man Financial and MF Global.

The SEC does not object to Magistrate Judge Tomlinson's recommendation that Defendants are entitled to an offset of $183,026.68 in clearing charges paid to RBC. *See* Reply at 17-18. The Court finds that these charges were direct trading costs made to effect Defendants' unlawful cross-trades, and therefore ADOPTS Magistrate Judge Tomlinson's recommendation that they be offset from disgorgement.

### 5. Prejudgment Interest

Defendants do not object to Magistrate Judge Tomlinson's recommendation that the Court impose prejudgment interest on the disgorgement figure, and the Court ADOPTS this recommendation as supported by the weight of the evidence. The Court directs the SEC to submit a revised prejudgment interest calculation based upon the deduction of $183,026.68 from total disgorgement, such amount representing clearing charges paid by the Defendants to RBC to execute cross-trades during the period January 1, 2007 through December 31, 2009.

### C. Relief Defendant's Disgorgement

Magistrate Judge Tomlinson recommends that this Court order the disgorgement of $807,346.51 from Relief Defendant Katherine Nadel, plus prejudgment interest in the amount of $156,033.03. R&R at 65. Defendants object to this recommendation on two grounds. First, Defendants argue Relief Defendant has a plausible legitimate claim to these assets based on her

work for Defendant corporations WDNC and RIA.  Objections at 14-16 (citing *C.F.T.C. v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2006) (holding a court "may only require disgorgement of the assets of a relief defendant upon a finding that she lacks a 'legitimate claim' to the assets"). Second, Defendants argue the Court should exercise its discretion not to impose disgorgement on Relief Defendant in the interest of fairness, as she was "merely collateral damage to her husband's wrongdoing."  Objections at 17.

The SEC responds that Relief Defendant has no legitimate claim to the money at issue, which the SEC contends is merely a diverted portion of Defendants' ill-gotten gains.  Reply at 18.  In support of this claim, the SEC refers to the deposition testimony of Relief Defendant, which "differ[s] considerably with respect to the duration of [Relief Defendant's] employment and the range of her responsibilities" from what is outlined in Defendants' post-trial briefing and objections.  *Id.* at 18-19.  The SEC also highlights the difference between "the amounts and pattern of payments the Relief Defendant received, and the compensation Nadel paid his actual full time assistant," as further evidence of the illegitimacy of Relief Defendant's claim to these funds.  *Id.* at 20.

Upon a *de novo* review of the record, this Court finds that Relief Defendant Nadel lacks any plausible legitimate claim to the funds at issue.  Before she was named a Relief Defendant and had a direct financial incentive to adjust her testimony, Ms. Nadel testified that she had a very limited role at WDNC and RIA consisting mostly of "secretarial" work.  R&R at 60.  Relief Defendant received extraordinarily inconsistent payments from WDNC and RIA; of the $807,346.52 she received as compensation during the 2007-2009 period, she received $435,800

11

in 2007 alone.[2] *Id.* at 63. Defendant Nadel's full-time assistant, by contrast, received a consistent income of $74,363.66 over the same timeframe. *Id.* at 62 (citing to Pl.'s Hrg. Ex. 138 ¶ 20).

In light of the record, the Court declines to exercise its discretion to excuse Relief Defendant from disgorgement. The Court ADOPTS Magistrate Judge Tomlinson's recommendation that Relief Defendant Katherine Nadel disgorge $807,346.51, plus prejudgment interest in the amount of $156,033.03.

## CONCLUSION

For the reasons stated above, the Report and Recommendation, ECF No. 128, is ADOPTED in its entirety. The Court directs the SEC to submit a revised prejudgment interest calculation based upon the sole offset of $183,026.68 in clearing charges paid to RBC from disgorgement.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: September 8, 2016
Brooklyn, New York

---

[2] Relief Defendant's explanation for the dramatic decrease in her compensation after 2007 was that "[she] must have been doing less work." R&R at 62 (citing Pl.'s Hrg. Ex. 176).